UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 2:13-CR-14 |
| | ) |
| OSCAR FERNANDEZ | ) |

**MEMORANDUM AND ORDER**

Now before the Court is the defendant's *pro se* motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i). [Doc. 198]. The United States has responded in opposition to the motion [docs. 200, 202], and the defendant has not replied within the time allowed by this court's Local Rules.

The matter is now ripe for the Court's consideration. For the reasons stated below, the defendant's motion for compassionate release will be denied.

## I. BACKGROUND

In January 2014, this Court sentenced the defendant to a term of 120 months' imprisonment for his role in a marijuana distribution conspiracy. The defendant is presently housed at Giles W. Dalby Correctional Institution with a projected release date of September 19, 2021. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Dec. 18, 2020). He now moves for compassionate release due to the COVID-19 pandemic, diabetes, hypertension, sleep apnea, and age (63).

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and

compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit have previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but, as of November 20, 2020, are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files

a motion for compassionate release.").[1] "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Id.* at 1114.

## A. Exhaustion

The defendant has previously submitted a compassionate release request to the BOP, and more than 30 days have passed since that request was received by the warden. [Doc. 198]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

## B. Merits

As mentioned above, in support of his motion the defendant cites the COVID-19 pandemic, diabetes, hypertension, sleep apnea, and his age (63). Consistent with § 3582 and the Sixth Circuit's holding in *Jones*, this Court has considered the defendant's arguments and the broader facts of this case in light of the pertinent § 3553(a) factors. Pursuant to 18 U.S.C. § 3553(a),

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and

---

[1] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

3

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

4

Case 2:13-cr-00014-RLJ-CRW   Document 204   Filed 12/23/20   Page 4 of 8   PageID #: 545

At the defendant's correctional institution, there is currently one inmate positive for COVID-19, with 87 inmates having recovered, and three inmate deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Dec. 18, 2020). The COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

BOP medical records show that the defendant has hypertension, type 2 diabetes, unspecified neuropathy, and two masses (or lesions) on his back. [Doc. 202]. At present, type 2 diabetes is considered to be a condition which creates an increased risk of severe illness from COVID-19, and the risk of COVID-related complications generally increases with age. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 18, 2020). Additionally, persons with hypertension might be at increased risk. [*Id.*].

The BOP's SENTRY Report shows that the defendant is categorized as Care Level 2. "Care Level 2 inmates are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical . . . conditions can be managed through routine, regularly

5

scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time." *See* [http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf](http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf) (last visited Dec. 18, 2020).

Turning to the nature and circumstances of the instant offense and the defendant's history and characteristics, in this case the defendant employed at least four couriers to transport marijuana from Texas to this district. [Presentence Investigation Report ("PSR"), ¶¶ 10-11]. The defendant "choreographed the travel of the co-conspirators and arranged for the acquisition of the marijuana with his contact(s) near the Mexican border." [*Id.*]. He was living in this district under a stolen identity and "was not legally in the United States having previously been deported . . . after previously having been convicted of a felony drug offense." [*Id.*, ¶ 16]. At sentencing, the defendant's offense level was increased by three based on his managerial or supervisory role in the conspiracy, pursuant to guideline § 3B1.1(b), even though he claimed to have acted under duress. [*Id.*, ¶¶ 20, 25].

In his PSR interview, the defendant stated that he was diabetic and on prescribed medication for that condition. [*Id.*, ¶ 45]. There are prior convictions for burglary, possession with intent to distribute between 60 and 2,000 pounds of marijuana, and illegal reentry. [*Id.*, ¶¶ 17, 35-37]. The defendant has come into this country illegally numerous times since age ten. [*Id.*, ¶¶ 16, 37, 44]. He is presently subject to a U.S. Immigration and Customs Enforcement ("ICE") detainer. [*Id.*, p. 2].

The SENTRY Report shows that the defendant has incurred two disciplinary sanctions during his current term of imprisonment, for giving or accepting money without

6

authorization and for refusing "to go to C Unit." The BOP nonetheless considers him a low-security inmate with a low risk of recidivism.

The Court has considered the relevant § 3553(a) factors, the facts of this case, the defendant's history and characteristics, and the arguments raised in the instant motion. The Court notes the defendant's health problems and the relatively minimal time left on his sentence. However, these points are outweighed by the defendant's multiple illegal reentry and controlled substance offenses. His BOP disciplinary infractions, while comparatively minor, are also a concern. There have been at least two prior deportations which did not deter the defendant's criminal conduct in this country. Diabetes also did not keep him from performing a leadership role in this case.

The Court lastly notes the pending ICE detainer. As pointed out by the United States, upon release from BOP custody the defendant will likely be transferred to an ICE detention center for an undetermined length of time. There has been no showing that the defendant would be any safer from COVID-19 at that facility than he is at his prison where, as noted, there is currently only one active case among the inmate population. *See, e.g., United States v. Maka*, CR. NO. 03-00084 SOM, 2020 WL 2544408, at *4 (D. Haw. May 19, 2020) (noting the uncertainty of whether a BOP or an ICE facility would leave the defendant more vulnerable to COVID-19).

The Court concludes that compassionate release would not reflect the seriousness of the instant offense, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of the defendant. The Court therefore does not find extraordinary and compelling reasons

7

justifying compassionate release.

## III.  CONCLUSION

As provided herein, the defendant's motion for compassionate release [doc. 198] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge